UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN R. TOUCHTONE,                        Case No. 09-13500

                    Plaintiff,              Nancy G. Edmunds
vs.                                         United States District Judge

COMMISSIONER OF                            Michael Hluchaniuk
SOCIAL SECURITY,                            United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On September 3, 2009,  plaintiff filed the instant suit seeking judicial review
of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).
Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge
Nancy G. Edmunds referred this matter to the undersigned for the purpose of
reviewing the Commissioner's decision denying plaintiff's claim for a period of
disability benefits.  (Dkt. 3).  This matter is currently before the Court on cross-
motions for summary judgment.  (Dkt. 9, 12).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on November 2, 2006, alleging that he

became unable to work on February 1, 2006.  (Dkt. 7, Tr. at 128-135).  The claim

was initially disapproved by the Commissioner on March 29, 2007.  (Dkt. 7, Tr. at

67-73).  Plaintiff requested a hearing and on October 20, 2008, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) John J. Rabaut, who

considered the case *de novo*.  In a decision dated December 12, 2008, the ALJ

found that plaintiff was not disabled.  (Dkt. 7, Tr. at 21-30).  Plaintiff requested a

review of this decision on December 16, 2008.  (Dkt. 7, Tr. at 15-17).  The ALJ's

decision became the final decision of the Commissioner when, on July 6, 2009,

plaintiff's request for review was denied.  (Dkt. 7, Tr. at 3-5).

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 29 years of age at the time of the most recent administrative

hearing.  (Dkt. 7, Tr. at 125).  Plaintiff's relevant work history included

approximately 9 years as a cook, dishwasher, lawn care and farm worker, and a

telemarketer.  (Dkt. 7, Tr. at 142).  In denying plaintiff's claims, defendant

Commissioner considered bipolar disorder; social phobia; obstructive sleep apnea;

and degenerative disc disease of the lumbar spine as possible bases of disability.

(Dkt. 7, Tr. 23).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

February 1, 2006. (Dkt. 7, Tr. at 23). At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7, Tr. at 26). At step four, the ALJ found that plaintiff could not perform his previous work as a fast-food worker, a maintenance and general laborer, a production worker; or a telemarketer. (Dkt. 7, Tr. at 28). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7, Tr. at 29).

The ALJ found the claimant to have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as restricted by the following: "(a) the claimant should be allowed the option to sit or stand at will throughout the workday; (b) the claimant should never be required to climb ladders, ropes or scaffolding; (c) the claimant is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements, and involving only simple work-related decisions with few, if any, work place changes; (d) the claimant is limited to only occasional interaction with coworkers with no tandem task; (e) the claimant should not work with the general public." (Tr. 27).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ failed to give controlling weight to plaintiff's treating physician's opinion regarding the extent of plaintiff's low back pain caused by the herniated lumbar disc.  (Dkt. 9).  Plaintiff also argues that the ALJ failed to account for the non-exertional limitation of pain in the RFC in accordance with SSR 96-5p.  Plaintiff asserts that the ALJ failed to reconcile the opinions of the consultative examiner who found no evidence of radiculopathy and plaintiff's report in an emergency room record of mild tingling in the left leg.  According to plaintiff, the ALJ's failure to fully credit his testimony is not supported by the substantial evidence.

Additionally, plaintiff argues that the ALJ's RFC is faulty because it failed to take into account his consistently low GAF scores caused by plaintiff's bipolar disorder and social phobia.  Rather, plaintiff argues, the ALJ only relied on the instances where plaintiff's GAF score showed a higher level of functioning and ignored other evidence showing the impairment in social functioning and inappropriate displays of anger and hostility directed at himself, family, and co-workers.

C.    Commissioner's Motion for Summary Judgment

With respect to plaintiff's claim of disabling back pain, the Commissioner argues that plaintiff does not identify a single medical source who prescribed

functional limitations greater than those set forth in the ALJ's RFC finding. Further, plaintiff fails to acknowledge that doctors found few clinical abnormalities indicative of disabling pain. Plaintiff also fails to acknowledge the minimal nature of his treatment history for his back pain, which, according to the Commissioner, was intermittent and sporadic, at best. While plaintiff claimed to be disabled from back pain beginning in February 2006, he did not seek treatment for over one year and was only treated once in a two year period. None of plaintiff's physicians placed any significant limitations on his activities or ability to work and plaintiff's activities were extensive. Accordingly, the Commissioner argues that the ALJ properly found plaintiff's complaints to be not fully credible. The Commissioner also urges the Court to reject plaintiff's claim that Dr. Schell was a treating physician, given that he examined plaintiff only once, and moreover, the Commissioner points out that Dr. Schell did not place any functional restrictions on plaintiff.

As to plaintiff's mental impairments, the Commissioner also maintains that the ALJ's RFC incorporated all of plaintiff's limitations and was supported by substantial evidence in the record. The Commissioner urges the Court to reject plaintiff's contention that the ALJ failed to consider his lower GAF scores given that the ALJ appropriately attributed his lower GAF scores to increases in social stressors and inconsistent medication compliance. According to the

Report and Recommendation
Cross-Motions for Summary Judgment
*Touchtone v. Comm'r*; Case No. 09-13500

Commissioner, plaintiff's GAF scores were typically higher when his conditions were properly addressed with medications.  Moreover, according to SSA policy, GAF scores are not determinative of an individual's RFC or disability status, but rather, should be viewed as part of the whole of the record evidence.

## III.   DISCUSSION AND ANALYSIS

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

     The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

Report and Recommendation
Cross-Motions for Summary Judgment
*Touchtone v. Comm'r*; Case No. 09-13500

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.     <u>RFC and Credibility</u>

     The ALJ's credibility finding is entitled to deference and should not be

disregarded given the ALJ's opportunity to observe the plaintiff's demeanor.

However, if the ALJ rejects the testimony of the plaintiff as not being credible, the

ALJ must clearly state the reasons for that conclusion.  *Felisky v. Bowen*, 35 F.3d

1027, 1036 (6th Cir. 1994).  The residual functional capacity circumscribes "the

claimant's residual abilities or what a claimant can do, not what maladies a

claimant suffers from-though the maladies will certainly inform the ALJ's

conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not

affect his or her functional capacity to do work.  One does not necessarily establish

the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).

"The regulations recognize that individuals who have the same severe impairment

may have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Not all impairments

deemed "severe" in step two must be included in the hypothetical.  *Griffeth*, 217

Fed.Appx. at 429.  "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations does not divest the ALJ of his or her

obligation to assess credibility and determine the facts." *Redfield v. Comm'r of*

*Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ  is only required to

incorporate the limitations that he finds credible.  *Casey*, 987 F.2d at 1235.  This

obligation to assess credibility extends to the claimant's subjective complaints such

that the ALJ "can present a hypothetical to the VE on the basis of his own

assessment if he reasonably deems the claimant's testimony to be inaccurate."

*Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight

to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84

(7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving

issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th

Cir. 1999).  An ALJ's findings based on the credibility of an applicant are to be

accorded great weight and deference, particularly since the ALJ is charged with the

duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

SSR 96-7p also provides guidance on the factors to be considered when

evaluating credibility:

> Assessment of the credibility of an individual's
> statements about pain or other symptoms and about the
> effect the symptoms have on his or her ability to function
> must be based on a consideration of all of the evidence in
> the case record. This includes, but is not limited to:

      * The medical signs and laboratory findings;

      * Diagnosis, prognosis, and other medical opinions
      provided by treating or examining physicians or
      psychologists and other medical sources; and

      * Statements and reports from the individual and from
      treating or examining physicians or psychologists and
      other persons about the individual's medical history,
      treatment and response, prior work record and efforts to
      work, daily activities, and other information concerning
      the individual's symptoms and how the symptoms affect
      the individual's ability to work.

The adjudicator must then evaluate all of this information and draw appropriate

inferences and conclusions about the credibility of the individual's statements. *Id.*

      As the Commissioner points out, plaintiff fails to identify a single medical

source that imposed any functional limitations as a result of his back pain. Plaintiff

testified that he injured in his back in early 2006, but did not seek any treatment

until well into 2007, which undermines his claim of disabling back pain. *Saad v.

Comm'r of Soc. Sec.*, 2009 WL 454650, *9 (E.D. Mich. 2009) (claimant's failure

to seek out medical treatment undermined disability claim). Dr. Bielawski, who

examined plaintiff in 2007, found the examination "unremarkable" and found little,

if any abnormality. (Tr. 217-218, 226). When Dr. Schell examined plaintiff, he

found only a decreased range of motion and a mild lumbar spasm. (Tr. 361). The

evidence is quite inconsistent regarding the origin of plaintiff's pain as well. At

one point, he tells a physician that he injured himself many times with lifting

2:09-cv-13500-NGE-MJH   Doc # 13   Filed 02/16/11   Pg 15 of 22   Pg ID 463

injuries and used to jump off a school building when he was kid. (Tr. 216). At
another point, he says that he never had any back problems before an incident in
February, 2006 where he heard a "pop" and that is when the pain became
disabling. (Tr. 53). Plaintiff's level of activity does not square with his claim. For
example, in March 2008, he reported volunteering 34 hours per week at a bingo
hall. (Tr. 262). Moreover, plaintiff does not offer any opinion from a treating
physician that he was more physically limited than as found by the ALJ. *See
Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir.1987),
citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical
restrictions constitutes substantial evidence for a finding of non-disability.").
Based on the foregoing, plaintiff offers no basis for the undersigned to recommend
overturning the ALJ's findings regarding plaintiff's physical limitations.

     D.   <u>Mental Impairment</u>

     As to an allegedly disabling mental impairment, the Commissioner has
promulgated a special technique to ensure that all evidence needed for the
evaluation of such a claim is obtained and evaluated. This technique was designed
to work in conjunction with the sequential evaluation process set out for the
evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress
laid the foundation for making disability determinations when mental impairments
are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the

Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. *Id*. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R.

§ 404.1520a(d)(1).  If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability.  *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2).  The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met.  *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*.  If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment.  *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The ALJ limited plaintiff to simple, routine, and repetitive tasks performed in an environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any, work place changes (Tr. 27).  The RFC finding further limited plaintiff to only occasional interaction with coworkers, with no tandem tasks, and no interaction with the general public.  (Tr.

27).  Again, plaintiff does not point to a single medical source setting forth restrictions greater than those accounted for by the RFC finding.  The scope of the RFC's restrictions are based on substantial evidence given that plaintiff was able to concentrate on video games and other leisure activities, such as books and television, with no apparent difficulty and he could even administer bingo-games on a regular, sustained basis.  (Tr. 28, 39-40, 258, 262, 151-52, 155, 163, 204, 247, 251, 319).  *See Garrett v. Comm'r of Soc. Sec.*, 2009 WL 185722, *6 (E.D. Mich. 2009) (claimant's ability to, inter alia, shop, use the internet, follow movies, and maintain a romantic relationship undermined disability claim premised upon mental impairment).

The undersigned also finds that plaintiff's reliance on his GAF scores is unavailing in light of the entirety of the record evidence.  As the Commissioner points out, though there were times when his scores remained low despite treatment, plaintiff's GAF scores were generally higher, in the 60-70 range ( reflective of an individual with mild-to-moderate difficulty in social/occupational functioning) when his condition was properly addressed with medication.  (Tr. 204, 207-208, 215, 229, 254, 258, 260-61, 280-84).  Absent deviations from his prescribed treatment plan, plaintiff generally denied suffering from hallucinations or suicidal/homicidal ideation.  (Tr. 207-208, 211, 215, 254, 258, 260-61, 278, 282-84).  Plaintiff's medical status was typically recorded as stable by his treating

sources, who noted that he was generally cooperative and friendly.  (Tr. 204, 208,

210-11, 215, 254, 258, 278).  He did not suffer from cognitive distortion or a

thought disorder.  (Tr. 210).  Plaintiff's memory was intact, his mood was

generally pleasant, and his thought process was organized.  (Tr. 204, 207-208, 211,

215-16, 254, 258, 260-61, 278, 282-84).  According to SSA policy, GAF

scores are not determinative of an individual's RFC or disability status. See 65

Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale . . . does not have a direct

correlation to the severity requirements in our mental disorders listings."); see also

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496 511 (6th Cir. 2006) ("[W]e

are not aware of any statutory, regulatory, or other authority requiring the ALJ to

put stock in a GAF score in the first place."); *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to

the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus,

the ALJ's failure to reference the GAF score in the RFC, standing alone, does not

make the RFC inaccurate.").  Based on the foregoing, the undersigned cannot say

that the ALJ's decision is unsupported by the substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

21

rule without awaiting the response.

                                        s/Michael Hluchaniuk
Date:  February 16, 2011                Michael Hluchaniuk
                                        United States Magistrate Judge

### CERTIFICATE OF SERVICE

        I certify that on February 16, 2011, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: John L. Wildeboer, Judith E. Levy, AUSA, and the
Commissioner of Social Security.

                                        s/Darlene Chubb
                                        Judicial Assistant
                                        (810) 341-7850
                                        darlene_chubb@mied.uscourts.gov